IN THE UNITED STATES DISTRICT COURT
WESTERN DIVISION OF TEXAS
EL PASO DIVISION

FILED
2009 MAY -8 PM 2:26
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____Fm_____
        DEPUTY

Michael D. Greene,   )
    Plaintiff,       )
                     )
v.                   )   Civil Action No. 3:08-CV-00483-DB
                     )
WOODFOREST NATIONAL BANK,  )
    Defendant.       )

### PLAINTIFF'S AMENDED ORIGINAL COMPLAINT

Comes now Plaintiff to file his amended complaint as ordered by this court's memorandum and order dated April 23, 2009.

#### A. Parties

1.  Plaintiff, Michael D. Greene, is an individual that is a citizen of the State of Arizona.

2.  Defendant, Woodforest National Bank (Woodforest), is a national banking association, duly organized and existing under the laws of the State of Texas, having its principal place of business in Conroe, Montgomery County, Texas. Defendant may be served with process by serving its registered agent, Albert Daigle, 80 Uvalde, Houston, Texas 77013.

#### B. Jurisdiction

3.  Under 28 U.S.C. Section 1331, in the determination of a federal question, the district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. The court has jurisdiction over the lawsuit under 28 U.S.C. Section 1332(a) because the Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds

$75,000, excluding interest and costs.

### C. Venue

4.   Defendant Woodforest operates branch banks within the Western District creating substantial connection with the Western District and avails itself of benefits and protections within this district. For purposes of 28 U.S.C.A. Section 1391, Woodforest resides in the Western District and venue is proper in the Western District.

### D. Conditions Precedent

5.   All conditions precedent have been performed or have occurred.

### E. Facts

6.   On December 14, 2004, Plaintiff, Michael D. Greene, 195 Bent Tree Dr., Sedona, Arizona 86531, opened demand deposit account number 3884863 (demand deposit contract) with Defendant, Woodforest National Bank, Tomball, Texas. This was a single party account, with Greene the only signatory on the account, and listing the account mailing address as 6911 Estates Court, Magnolia, Texas 77354. See attached Exhibit "A".

7   On July 13, 2005, approximately 6 months after Plaintiff opened demand deposit account number 3884863 with Defendant Woodforest, Plaintiff received a wire transfer deposit from Chicago Title Insurance Company in the amount of $630,199.65. See Exhibit "B".

8.   Plaintiff's statement of account, issued by Defendant, dated August 4, 2005 and September 4, 2005 listed Plaintiff's account 3884863 available deposits in the unencumbered amount of $576,809.27.

9. On or about August 31, 2005, Plaintiff issued checks #1030 in the amount of $150,000, #1031 in the amount of $300,000, and #1032 in the amount of $109,350, each payable to Virginia McAlister (Greene's mother). On September 12, 2005, Plaintiff tendered performance when Ms. McAlister presented check #1031 to Woodforest Dennis Texas branch bank and requested it be converted into two cashier's checks, one in the amount of $10,000 and the balance ($290,000) in the second cashier check. Without stating cause to Ms. McAlister, Woodforest refused to honor payment of Plaintiff's check #1031 and turned Ms. McAlister away. There was no request made by Ms. McAlister to close Plaintiff's account as Ms. McAlister had possession of other checks drawn on Plaintiff's account payable to her not yet presented for payment.

10. On or about September 6, 2005, Plaintiff issued check #1033 drawn on account 3884863 payable to Teachers Retirement System of Oklahoma in the amount of $15,019.32. On or about September 14, 2005, Woodforest refused to honor check #1033, returned it unpaid and stamped it "Refer to Maker". Plaintiff had signed the check, it was properly presented for payment, there were available deposits in Plaintiff's account, and yet Woodforest dishonored the check.

11. On or about September 13, 2005, Ms. McAlister deposited checks #1030 and #1031 (in the amount of $150,000 and $300,000 respectfully) into her own account at Edward Jones & Co. Woodforest dishonored both checks, returned the checks unpaid to Ms. McAlister, and stamped them "Refer to Maker". Both were genuine checks, bearing Plaintiff's signature, properly presented for payment, there were available deposits in Plaintiff's account, and yet Woodforest dishonored the checks.

12. On or about September 19, 2005, Ms. McAlister deposited check #1032 in the

amount of $109,350 in her bank of Oklahoma account and Woodforest refused to honor it, returned it unpaid, and stamped it "Refer to Maker". Plaintiff had signed check #1032, it was properly presented for payment, there were available deposits in Plaintiff's account, and yet Woodforest dishonored the check.

13. On or about September 22, 2005, Plaintiff issued checks #1034 and #1035, each in the amount of $150,000, payable to Ms. McAlister as replacement for unpaid check #1031 in the amount of $300,000. Ms. McAlister deposited checks #1034 and #1035 into her Edward Jones & Co. account and Woodforest refused to honor them, returning them unpaid, stamped "Signature Not Like On File". Plaintiff signed the checks, there were available deposits in Plaintiff's account,

and Woodforest failed to honor checks #1034 and #1035 even after Woodforest Forgery Investigator, Ms. Connie Garcia, reviewed the signature on the checks and determined it appeared to be Plaintiff's signature.

14. On September 12, 2005, Woodforest Risk Management personnel reviewed Plaintiff's account after Ms. McAlister's attempt to convert Plaintiff's check #1031 to two cashier's checks. Woodforest management, Mr. Michael White, issued a directive to "free that account [Plaintiff's account] immediately". See Exhibit "C". However, contradictory to Mr. White's directive, Woodforest dishonored check #1033 on 9-13-05, dishonored check #1030 on 9-14-05, dishonored check #1031 on 9-15-05, dishonored check #1032 on 9-22-05, dishonored check #1034 on 9-26-05, and dishonored check #1035 on 9-26-05. See Exhibit "D".

15. Woodforest's record documenting its cause to return (dishonor) Plaintiff's checks #1030, #1031, #1032, #1033, #1034, and #1035 is very vague; a single line entry on a page listing "TX TO FROZEN ACCT", without explanation or authority

cited giving Woodforest legal excuse to freeze Plaintiff's account.

16. On or about September 29, 2005, Hayden B. Greene (Michael D. Greene's son) went into a Woodforest branch bank in Tomball Texas and presented a properly executed Texas General Durable Power Of Attorney and requested to close Plaintiff's account 3884863. Woodforest denied Hayden B. Greene's request to close the account. Woodforest Forgery Investigator, Ms. Garcia, arbitrarily and capriciously determined the power-of-attorney presented by Hayden B. Greene was inadequate because (1) it was over a year old, (2) that it didn't state he had authority to close the account (in contradiction to the presented power-of-attorney), (3) that Woodforest was not required to honor a power-of-attorney, and (4) that she didn't refer to Woodforest's power-of-attorney policy to determine if Plaintiff's power-of-attorney was compliant.

17. On January 16, 2007, Plaintiff and Ms. McAlister served Woodforest with a demand letter alleging various claims, including Woodforest dishonoring Plaintiff's checks #1030, #1031, #1032, #1033, #1034, and #1035, and damages in the amount of $859,500.

18. On March 1, 2007, Woodforest in the State of Texas District Court, Montgomery County, sued Virginia McAlister, a/k/a Virginia Kindred, individually and d/b/a VK Investments, Michael D. Greene, individually and d/b/a VK Investments, and Hayden B. Greene, individually and d/b/a Tomahawk Custom Choppers, LLC and d/b/a Tomahawk Manufacturing , LLC, to obtain declaratory judgment as to the rights, status, and other legal relations of the parties under a deposit account contract. Plaintiff and Ms. McAlister answered the suit with a general denial on March 19, 2007.

19. On September 5, 2008, Plaintiff filed a counterclaim against Woodforest for

breach of contract, seeking $576,953.87 in damages in the form of loss property, invasion of legal rights, and attorney fees.

### Count 1 - Violation of the Expedited Funds Availability Act

20. Woodforest is in violation of a federal law, the Expedited Funds Availability Act (EFAA), 12 U.S.C. Sections 4001 et seq., for failing to allow Plaintiff to withdraw his available deposits as set forth in the act.

21. The purpose of the EFAA is to require banks to make funds available to depositors quickly. Thus the depositors have rights, enforceable in court while the banks have obligations, which the Federal Reserve Board have established by regulation and enforce in administrative proceedings. First Ill. Bank & Trust v. Midwest Bank & Trust Co., 30 F.3d 64, amd, reh, en banc, den (CA7 Ill. 1994) 1994 US App LEXIS 26008.

22. The availability schedule for wire transfer deposits is under 12 U.S.C. § 4002(a) and states the following:

> § 4002. Expedited funds availability schedules
> (a) Next business day availability for certain deposits. (1) Cash deposits; wire transfers. Except as provided in subsection (e) [Deposits at an ATM] and in section 604 [12 U.S.C.S. § 4003 [New Accounts]], in any case in which---
> > (A) any cash is deposited in an account at a receiving depository institution staffed by individuals employed by such institution, or
> > (B) funds are received by a depository institution by wire transfer for deposit in an account at such institution,
> such cash or funds shall be available for withdrawal not later than the business day after the business day on which such cash is deposited or such funds are received for deposit.

23. The civil liability for violation of the EFAA is under 12 U.S.C. § 4010(a), and is as follows:

**§ 4010 Civil liability**

(a) Civil liability. Except as otherwise provided in this Section, any depository institution which fails to comply with any requirement imposed under this title [12 U.S.C.S. §§ 4001 et seq.] or any regulation prescribed under this title with respect to any person other than another depository institution is liable to such person in an amount equal to the sum of---

    (1) any actual damage sustained by such person as a result of the failure;

    (2) (A) in the case of an individual action, such additional amount as the court may allow, except the liability under this paragraph shall not be less than $100 nor greater than $1000;.....

    (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

24. The implementing regulations for the EFAA is under Federal Code of Regulations (C.F.R.) Section 229, referred to as Regulation CC.

25. Woodforest is a national bank, regulated by the Office of the Comptroller of the Currency and as such is a "depository institution" as defined under 12 U.S.C. § 4001 and is subject to the requirements imposed under EFAA.

26. In the demand deposit account contract 3884863 between Plaintiff and Defendant, Woodforest admits it is regulated by federal law and specifically the law regarding the availability of deposited funds, stated as follows (See Exhibit"A"):

    "Much of our relationship with our deposit customer is regulated by state and federal law, especially the law relating to negotiable instruments, the law regulating the methods of transferring property upon death and the rights of surviving spouses and dependents, the law pertaining to estate and other succession taxes, the law regarding electronic funds transfer, and the law regarding the availability of deposited funds. This body of law is too large and complex to be reproduced here."

27. As required by Regulation CC, Woodforest provided Plaintiff Defendant's

schedule for the availability of deposits, "Woodforest National Bank Funds Availability Policy", and states in part (See Exhibit "A"):

> "[Our] policy is to make funds from your deposits available to you on the first banking day after we receive your deposit. At that time, you can withdraw the funds in cash and we will use the funds to pay checks you have written."

28. In the demand deposit account contract number 3884863, drafted by Woodforest, between Plaintiff and Woodforest, Defendant states its obligation in regards to withdrawals as follows (See Exhibit "A"):

> "**WITHDRAWALS** - Unless otherwise clearly indicated on the account records, any one of you who signs this form including authorized signers, may withdraw or transfer all or any part of the account balance at any time on forms approved by us. ....."

29. Under the availability schedule at 12 U.S.C. § 4002(a) for wire transfer deposits it clearly states the deposit shall be available the following business day and Plaintiff's wire transfer deposit in the amount of $630,199.65 deposited on 7-13-2005 would have made the funds available for withdraw on or about 7-14-2005. See Exhibit "B".

30. During the month of September 2005, starting approximately 60 days after the subject deposit, Plaintiff properly presented checks #1030, 1031, 1032, 1033, 1034, and 1035 for payment at Woodforest bank. Woodforest refused to honor the checks denying Plaintiff his $576,809.27 available deposits in violation of 12 U.S.C § 4002(a). See Exhibit "D".

31. On or about September 29, 2005, Plaintiff's son presented a properly executed Texas General Durable Power Of Attorney to close Plaintiff's account 3884863. Woodforest denied the request, denying Plaintiff access of his $576,809.27 available deposits in violation of 12 U.S.C. § 4002(a).

32. Woodforest has failed to comply with EFAA availability schedule for Plaintiff's deposits. Woodforest is liable to Plaintiff under 12 U.S.C. § 4010 for loss of his $576,809.27 available deposits.

### Count 2 - Tort Claim

33. Woodforest interference with contractual relations perpetrated by bank employee caused Plaintiff loss of his ability to manage his deposits, ultimately causing Plaintiff loss of use of his $576,809.27 available deposits.

34. The elements of a tort cause of action are (1) a duty to the Plaintiff, (2) a breach of that duty, and (3) proximate cause of damages.

35. A bank is under the duty to disburse funds in accordance with the direction of depositors. Mesquite State Bank v. Professional Inv. Corp. (Tex), 488 SW2d 73, reh of cause overr (Jan 17, 1973); First Nat'l Bank v. Hubbs, (Tex Civ App Houston (1st Dist)) 566 SW2d 375. A bank assumes the obligation to pay out on depositors demand or order a sum equal to the amount deposited, with or without interest, depending on the nature of the account. Leather Mfs Nat Bk v. Merchants Nat. Bk., 128 US 26, 9 S Ct 3; Scammon v. Kimball, 92 US 362, 23 LED 483.

36. The nature of the obligation of a bank to a depositor has been deemed to constitute a nonnegotiable chose in action. Anderson Nat'l Bank v. Luckett, 321 US 233, 64 S Ct 599.

37. Money on deposit in a bank is commonly considered property of the depositor. Delware v. New York, 507 US 490, 113 S Ct 1550.

38. Woodforest breached its duty to Plaintiff failing to disburse funds in accordance with Plaintiff's directions and the clear and unambiguous terms of the contract. Plaintiff demanded withdrawal of his $576,809.27 available deposits

via properly presented checks #1030, 1031, 1032, 1033, 1034, and 1035. Woodforest employees Ms. Garcia and Ms. Rhonda Hicks improperly froze Plaintiff's deposits.

39. As part of their employment duties, Ms. Garcia and Ms. Hicks had full knowledge of the terms and conditions governing the contract Plaintiff had with Woodforest. Both Ms. Garcia and Ms. Hicks were aware of the state and federal law, bank policies, and congressional acts which govern the bank and the bank's employees' actions on a "demand deposit checking account". Both Ms. Garcia and Ms. Hicks have or should have been aware of their duties under state and federal law, bank policy and the EFAA.

40. Because both Ms. Garcia and Ms. Hicks knew of the requirements and duties they had pursuant to the above stated policies, regulations, and laws, because of their actions, it becomes clear that both Ms. Garcia and Ms. Hicks acted with intentional disregard of the rules and laws governing Plaintiff's contract with Woodforest. Ms Garcia and Ms. Hicks's action disrupted and interfered with Plaintiff's ability to access his funds as EFAA mandates and as the contract demands. Ms. Garcia and Ms. Hicks intentional disregard for the rules and law ultimately caused Plaintiff to not be able to complete his financial obligations to others.

41. Futhermore, Ms. Garcia and Ms. Hicks both acted contrary to the directive of Michael White, an officer of Woodforest, who directed Ms. Hicks to "free" the account. See Exhibit "C".

42. Woodforest futher breached its duty to Plaintiff failing to disburse Plaintiff's deposits when presented with a complaint power-of-attorney to close Plaintiff's account. Woodforest employee, Ms. Garcia, violated her duty to depositor and abused her position by refusing to honor the legally submitted and binding power-of-attorney where Woodforest employee, Ms. Lisa Berry, notarized Plaintiff's

execution of the subject power-of-attorney, thus denying Plaintiff withdrawal of his $576,809.27 available deposits.

43. Plaintiff has suffered the following damages because of Woodforest employees reckless disregard for EFAA and the demand deposit contract:

    (a) Loss of property, actual deposits of $576,809.27,

    (b) Loss of use of property,

    (c) Loss of goodstanding with creditors for not being able to pay,

    (d) Loss of ability to do business.

44. Plaintiff asks the court to construe his motion for the relief sought to be determined by substance not label. See Edwards v. City of Houston, 78 F.3d 983, 995 (5th Cir. 1996).

45. Plaintiff asks the court to apply the liberal construance doctrine for pro se litigants to his filings as stated in Hanines v. Kerner, 404 US 519 (1972).

### F. Damages

46. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in loss of property in the amount of $576,809.27.

### G. Attorney Fees

47. In the event an attorney is obtained by Plaintiff, Plaintiff is entitled to an award of attorney fees and cost under 12 U.S.C. § 4010.

### H. Prayer

48. For these reasons, Plaintiff asks for judgment against Defendant for the following:

    (a) Actual damages in the amount of $576,809.27,

(b) Prejudgment and postjudgment should be awarded in the interest of justice,

(c) Treble damages in this type of litigation is black letter law, in the amount of $1,730,427.81,

(d) Punitive damages; See <u>Memphis Community School District v. Stachura</u>, 477 US 299, 106 S Ct 2537; <u>Smith v. Wade</u>, 461 US 30, 103 S Ct 1625,

(e) Cost of all legal fees and expenses, including attorney if applicable,

(f) All other relief the court deem appropriate.

Respectfully submitted,

*Michael P Greene*

Michael D. Greene, Pro Se
ID# 07678062
Federal Prison Camp La Tuna
P.O. Box 8000
Anthony, NM/TX 88021

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of Plaintiff's Amended Complaint has been served upon counsel of record by first-class postage affixed addressed as follows:

> Drucker, Rutledge & Smith, LLP
> Douglas R. Drucker
> Waterway Plaza One
> 10003 Woodloch Forest Drive, Ste 225
> The Woodlands, TX 77380

Date: May 5, 2009

_Michael D. Greene_
Michael D. Greene